# George M. Lockard et al., Plffs. in Err., *v.* Zebulon S. Robbins.

A right to remove, or use at will, a house built on another's land is merely a revocable license to let the building remain until a reasonable time after notice that it must be removed, and up to that time to use it where it stands.

The licensee's right is not personal. He may lease the house.

If the owner of the land obtains possession of the house from the tenant of the licensee upon the understanding that possession shall be restored to the tenant when demanded, this does not amount to a revocation of the license. The license can maintain an action for use and occupation against the owner of the land to recover compensation for such possession.

(Argued March 1, 1887. Decided March 14, 1887.)

January Term, 1887, No. 397, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Columbia County to review a judgment on a verdict for the plaintiff in an action of assumpsit. Affirmed.

This was an action by Zebulon S. Robbins against George M. and John K. Lockard, trading as G. M. & J. K. Lockard. It originated before a justice of the peace. The plaintiff's claim, as set forth on the justice's docket, was for $262.50 "rent for the use and occupation of a grain house on the property of tho defendants, agreeably to an article of agreement made between the said parties."

The agreement referred to was dated March 3, 1873, and was signed without seals by J. J. Robbins, J. M. Robbins, W. V. Robbins, and the plaintiff, Z. S. Robbins, of the one part, and

the defendants of the other part. The parties of the first part were individual members of a corporation entitled "The Columbian Iron & Manufacturing Company," which owned the land upon which the grain house in question stood. The agreement was as follows:

"*Whereas,* the said Lockards have purchased one fifth of claims due to the Columbian Iron & Manufacturing Company on their books, amounting to the sum of $1,087.95 (the one fifth) and have given their notes for the same, it is therefore agreed between the said parties that in case any part of the said claims are uncollectible or debts against the said corporation are presented to reduce the net amount of said claims to less, than the sum above mentioned, then the amount reduced is to be credited on the notes given by the parties of the second to the party of the first part, dated the day above written.

"It is further agreed by and between the said parties that the said parties of the second part shall have the option to purchase so as to become owners of one sixth of the whole stock of the corporation at any time within one year from the 10th day of February, A. D. 1873, from the parties of the first part, at par, and to be paid for as may be agreed at the time of purchase,—that is, so that John K. Lockard and George M. Lockard shall each become the owner of one sixth of the said capital stock of the company; Lockards to pay the proportion of the improvements. The said parties of the second part for value received do hereby assign, transfer, and set over to the said parties of the first, certificates of the capital stock of the said company numbers five and six, as collateral security for the payment of four notes, each $1,000, dated the date hereof, said certificates to be held by the parties of the first part until notes are paid.

"The grain house on the manufacturing company's lot belongs to Z. S. Robbins and can be removed or used by him at will.

"It is agreed by the parties that the corporation is free from debts beyond those on their books or statement."

The agreement was not executed by the corporation.

On October 24, 1873, the corporation assigned all its property to C. R. Woodin, for the benefit of creditors. The deed was executed by the corporation and by the plaintiff, Z. S. Rob-

bins, as one of its directors, and contained no reservations. The defendants remained in possession of the property to take care of it after the assignment, at the request of C. R. Woodin, the assignee, until the spring of 1874, and the plaintiff removed to Shenandoah, Schuylkill county.

On November 26, 1874, the assignee sold the property to M. W. Jackson at public auction; and on December 22, 1874, he executed a deed pursuant to said sale by auction, without any reservation, including buildings, etc.

About January 1, 1875, the defendants again took possession of the property under a lease from M. W. Jackson. Soon after this J. H. Stecker took possession of the grain house. Stecker was a friend and son-in-law of Z. S. Robbins. In October, 1876, Stecker gave the key to the grain house to John K. Lockard, one of the defendants, with the understanding that said Lockard could use the grain house until Stecker wanted it again. Soon after this Stecker removed to Three Rivers, Michigan, and never requested that the key be returned to him. George M. Lockard, the other defendant, had nothing to do with obtaining or receiving the key from Stecker.

On October 14, 1879, Jackson conveyed the property to the defendants, including buildings, and without any reservation. Soon after this the Lockards removed the grain house and set it up temporarily on props.

ELWELL, P. J., charged the jury as follows:

In this case the plaintiff claims for the use and occupation of a house (and the ground on which it stood) from October, 1876, to the time of the commencement of this suit February 14, 1882, at the rate of $50 a year. In such an action the right to recover is based upon contract. The plaintiff must establish by satisfactory evidence that the use and occupation have been with his consent and so as to infer an acknowledgment of his title. It is not necessary that there should be an express contract; it may be implied; as, if A labors for B, with B's knowledge and consent, there arises the presumption of B's agreement to pay, although no such bargain in terms be proved.

If one enter upon another's land under claim of ownership, he may be liable for tresspass or in ejectment, but not in action for the occupation and use, because there is no contract between him and the person on whose land he trespasses. Ordinarily

the declaration sets forth that the defendant, being indebted to the plaintiff for the use and occupation of certain lands described, undertook and faithfully promised to pay what the use and occupation thereof should be reasonably worth; but the declaration here contains only an allegation that the defendants occupied the plaintiff's land. However, the case is trying upon its merits, as much as though the other allegation were expressly made.

We must look through the evidence and ascertain whether there is anything from which a contract can be implied on the part of the Lockards to pay Robbins rent. We begin in 1873, the title not being traced further back, when [the Columbia Iron & Manufacturing Company, the owner of the land upon which the building in question then stood, in March, entered into an agreement among themselves, providing that these defendants might purchase a fifth part of the claims of that company, amounting to a certain sum, making a further agreement in regard to the stock of that concern, and containing this clause: "The grain house on the manufacturing company's lot belongs to Z. S. Robbins, and can be removed or used by him at will." It was perfectly competent for the parties to this agreement to declare in writing the ownership of this building described by one of the witnesses as temporarily set on blocks or props, not permanently fixed upon a foundation fastened in the soil. The parties had a right to consider it as severed from the realty, and did in fact treat it as personal property.

Perhaps it might, under the evidence here, have been levied upon and sold as a personal chattel belonging to Robbins; but the question of his right to occupy the ground of his associates is another matter and is for the court.

It is claimed for the plaintiff that he has a right to keep his building where it was as long as he chooses, enjoying access to it and the use of it. That amounts almost to a claim of fee simple in the soil, at any rate to the claim of a life estate in Robbins. [But I construe the agreement to give him a license, merely, to let his house stand and to use it, or to tear it down and remove it, to do whatever he pleases with it, until the owners of the soil should give him notice to take it away; a revocable license, not the grant of a perpetual right; authority to let the building remain until a reasonable time after notice that it

must be removed, and up to that time to use it where it stood], unless the title was devested by the subsequent conveyance.

[While the building stood on the spot of its erection, unmolested by the defendants, used by Robbins or his tenants, Robbins had the right to the use, the defendants acquiescing; but when they assumed the right to move it, if Robbins had any remedy, it was some other form of action than the present, because that act of removal without leave and apparently under claim of ownership put an end to all contract between the parties for the plaintiff's use of the building at the place where it originally stood.]

The conveyance by this corporation, in October, 1873, to Woodin, assignee, for the benefit of creditors, being for the land and for all ways, woods, water courses, and buildings, is said to be without reservation, and to take away all the plaintiff's title in the grain house, whatever it might have been before.

A conveyance in writing under seal must stand unmodified by parol, unless fraud or mistake be shown. [Robbins, as one of the company's directors, united in the conveyance which devested all the company's right. Woodin, the assignee, held that title just as the corporation held it. He was not a purchaser; he merely took the conveyance for the benefit of creditors, and he held just as the corporation did. But if the conveyance had been made to a bona fide purchaser without notice of the claim of Robbins, that purchaser would have taken the whole title to the property, the buildings, and everything else upon the soil] and under the soil and above it, the conveyance being sufficient to transfer all rights.

Whatever was said by M. E. Jackson, attorney for Woodin, or by the plaintiff, at the assignee's sale, would be of no validity as affecting the question of reservation to Robbins of title to the grain house, would not alter Robbins' right in the building; but if the purchaser at that sale had notice of Robbins' claim he took the property subject to Robbins' title whatever it is and was. If the title is worthless, the claim and the notice amount to nothing; if the title is good, the notice binds the conscience of the purchaser.

[Whether all persons connected with this property did, or did not, fully know of and understand Robbins' claim to it, is submitted to you to find from the evidence. Robbins says that some time in 1873 he leased to J. H. Stecker, at $50 a year, and that

Stecker occupied as his tenant for two or three years and paid him rent. Stecker, in his deposition, says he paid for about a year and a half, at $100 a year—from about 1873 to the fall of 1876, says Robbins; and says also: "It was worth $50 a year; Stecker paid me that."

In the view that I take of the case, the rights of the parties depended upon Stecker's tenancy and his delivery of the key to J. K. Lockard. If the Lockards obtained possession under Robbins' tenant, knowing him to be such, they stood in Stecker's shoes and are bound to acknowledge his landlord as theirs. Cooper v. Smith, 8 Watts, 539.

"The title of a landlord to real estate, though perfectly good, would frequently be rendered the next thing to worthless, etc. . . . He must surrender up the possession, and then, and not till then, will he be in a situation to controvert the title of the landlord."

Was Stecker, during these years from some time in 1873 to 1876, Robbins' tenant in the occupancy of this grain house? One of the Lockards testifies that for a while after the assignee's sale to Mordecai W. Jackson, they were "looking after" the property for him. Upon the other side it is testified that Stecker was renting the building, carrying the key, and controlling the possession, and that J. K. Lockard asked his permission to use the building, asked and obtained the key, promising to return it to Stecker, which is not denied by Lockard. Did the Lockards take possession by permission of Robbins' tenant, with the understanding that the possession should be restored to him? If so, and if the object was, by managing with the tenant, to oust the owner, the Lockards stand precisely where the tenant stood; the landlord would have to be turned out by due course of law, not by overreaching or colluding with his tenant.

If Stecker's tenancy existed, and if the Lockards gained possession in the manner stated by him, then the plaintiff is entitled to recover the reasonable rental of the property, from the time it was taken by the defendants down to the time that they removed the building (at some time between 1878 and March, 1880), with interest from the time the credits accrued, which will be for you to find.]

Verdict and judgment were for the plaintiff for $171.25.

The assignments of error specified the portions of the charge inclosed in brackets.

*E. H. Little* and *Robert R. Little,* for plaintiffs in error.— The court misapprehended the fact in charging that the corporation owner transferred the grain house on the company's lot to Z. S. Robbins. The agreement referred to shows that it was individual members who undertook to transfer the building; and that it was not the act of the corporation either by a vote of the directors or by any of its officers or agents.

Unless the individual members of a corporation are authorized to do so they cannot bind it by any express promise. Allegheny County Workhouse v. Moore, 95 Pa. 408.

There is no evidence that the grain house was set up temporarily on props, until after it had been removed by the Lockards in 1879. According to the evidence it was a fixture, until after the Lockards leased the property from M. W. Jackson, January 1, 1875. See Schouler, Pers. Prop. 136–140.

The rule is a general one that upon the sale of the freehold any and all fixtures attached to it will pass unless there is some express provision to the contrary. Schouler, Pers. Prop. 150.

Robbins should have removed the fixture at the time he sold, or within a reasonable time thereafter. Davis v. Moss, 38 Pa. 346.

Robbins waived his right to the grain house by assenting to the assignment for the benefit of creditors without reservation. Buck's Appeal, 2 Pennyp. 327.

When chattels are so far annexed to the freehold as to become fixtures, they pass to a grantee of the land, unless expressly excepted in the conveyance. Davis v. Buffum, 51 Me. 160; Noble v. Bosworth, 19 Pick. 314; Union Bank v. Emerson, 15 Mass. 159; Terhune v. Elberson, 3 N. J. L. 726; Miller v. Plumb, 6 Cow. 665, 16 Am. Dec. 456; Preston v. Briggs, 16 Vt. 124.

Robbins' interest was not a revocable license, but even if it was, the deed of assignment for the benefit of creditors, executed nearly seven years before the Lockards removed the grain house, operated as a revocation of the license. If there was a revocable license by a former owner, the sale and conveyance of the land operated as a revocation. Vollmer's Appeal, 61 Pa. 118.

An unsealed memorandum given by the owner of land, stating that A is the owner of a house upon the premises, and authoriz-

ing its removal, is a mere license to enter, and is revoked by a subsequent conveyance to B. Whitaker v. Cawthorne, 14 N. C. (3 Dev. L.) 389.

A parol license to enter and occupy land is revoked by the death of the owner of the land, or by a conveyance by him, and, therefore, cannot bind his successors, unless it is irrevocable. Eggleston v. New York & H. R. Co. 35 Barb. 162; Carter v. Harlan, 6 Md. 20, 38.

The deed to C. R. Woodin for the benefit of creditors, expressly conveys all buildings, without any reservation; and the words are employed by Z. S. Robbins, the plaintiff, for he executed the deed as one of the company's directors.

The words of an instrument shall be taken most strongly against the party employing them. Broom, Legal Maxims, p. 254.

In the absence of ambiguity, no exposition shall be made which is opposed to the express words of the instrument. Id. p. 266.

Again, if the court were right in construing the agreement of March 3, 1873, as giving Z. S. Robbins a revocable license, it does not give a license to Stecker, nor to any assignee of Robbins, nor to any person but Robbins, personally.

A license is a personal privilege and is not assignable; an assignment by a licensee determines his rights. Dark v. Johnston, 55 Pa. 164, 171, 93 Am. Dec. 732.

It is not contended that there was any express contract on the part of the Lockards to pay rent to Robbins. And the question here raised is whether the law will imply a contract, on the part of the undisputed owners of property, to pay rent to a party having no title whatever.

A tenancy by implication will in general arise when the ownership of premises is in one person and the occupation is in another, while there has been no distinct agreement. Jackson & G. Land. & T. 18.

Hence, Stecker as a trespasser was liable to pay the Lockards, and not Robbins for the use of the property.

A tenancy by implication can never arise under a party who has not the legal estate of the premises in question. Taylor, Land. & T. § 25, p. 15.

If the position of the parties to each other can be referred to

any other ground than that of a distinct tenancy, no promise to pay rent can be implied. Id. p. 491.

In no case does the action for use and occupation lie, unless the party has the legal estate, nor where the title is in dispute; for the court will not try the title in this action, the proper remedy in such cases being by ejectment. Id. p. 492.

*John G. Freeze,* for defendant in error.—To lay the foundation for a recovery in assumpsit for use and occupation of real estate, the relation of landlord and tenant must exist under a contract express or implied. Clark v. Clark, 58 Vt. 527, 3 Atl. 508.

The ownership of a building, with the right to use it, carries with it the right to put a tenant into it and receive the rents from him; and leasing the building is in no legal sense an assignment; and the authorities referred to by the plaintiffs in error do not touch the case before the court. 2 Bl. Com. chap. 20.

Even under the strict doctrine of the old cases relative to landlord and tenant the plaintiff below in this case is entitled to recover, because he proves: First, ownership; second, the right of use; third, reservation of the building at sale; fourth, acknowledgment of ownership in plaintiff by defendants below after the sale; fifth, tenancy under himself by Stecker, and payment of rent; sixth, the succession of defendants below, to the tenancy, by their request of the key, and agreement for its return.

But the contractual relationship is not so strictly held in the later cases, and the relaxation seems to be on just and equitable principles.

A contract to pay rent may be implied from the title of the plaintiff and the occupation of the defendant. Mercer v. Mercer, 12 Ga. 421; Cummings v. Noyes, 10 Mass. 433; National Oil Ref. Co. v. Bush, 88 Pa. 335.

Per Curiam:

Each of the twelve specifications of error is to the charge of the court. The evidence was sufficient to submit to the jury, and it was submitted in a clear and correct charge. We discover nothing therein calculated to mislead the jury. The facts found by them relieve the verdict from all legal difficulty, and well support the judgment.

Judgment affirmed.